## Case No. 3,302.

### COX v. GRIGGS.

[1 Biss. 362;[1] 2 Fish. Pat. Cas. 174; Merw. Pat. Inv. 703.]

Circuit Court, N. D. Illinois. April, 1861.

PRIORITY OF CLAIM TO INVENTION—"USEFUL" DEFINED—INFRINGEMENT.

1. It is the right and privilege of a party, when an idea enters his mind in the essential form of invention, to perfect by experiment his

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

original idea, so as not to be deprived of the fruit of his skill and labor by a prior patent, if he is the first inventor; but there must be a reasonable diligence, looking at all the facts of the case.

[Cited in National Filtering Oil Co. v. Arctic Oil Co., Case No. 10,042; Christie v. Seybold, 55 Fed. 77.]

2. It is necessary, in order to prevent a man from having the benefit of his patent, that another should have first discovered the thing and reduced it to actual practice.

[Cited in Webb v. Quintard, Case No. 17,324.]

3. If two persons are jointly experimenting and equally meritorious, a doubt should be solved in favor of him who first obtains a patent.

4. "Useful," in the patent law, is in contradistinction to "mischievous:" the invention should be of some benefit.

[Cited in Cook v. Ernest, Case No. 3,155; Converse v. Cannon, Id. 3,144.]

5. The question, as to infringement, is not whether the defendant's machine works the best, but, does it use the plaintiff's invention?

At law. This was an action on the case tried by Judge Drummond and a jury to recover damages for the infringement of letters patent [No. 25,098] granted to Thomas S. Cox, August 16, 1859, for "an improvement in the mole of drain plows." A mole plow is an implement of iron, forced by appropriate machinery, in a horizontal direction, below the surface of the earth, in such a manner as to leave behind it a drain hole or tube, the sides of which are formed of compressed earth. The claim and an extract from the specification are given in the charge of the court.

S. A. Goodwin, for plaintiff.
C. B. Waite, for defendants.

DRUMMOND, District Judge. This case has been so fully argued that it is not necessary to comment on it at much length. The questions of law are few and simple. The main controversy is as to the facts. It is proper, in the first place, to call your attention to the plaintiff's patent. The specifications are brief, and, that you may comprehend them, I will read an extract: "The nature of my invention consists in forming the terra ducts 'B' on either side of the shank 'A' in such a shape as to carry the dirt from the bottom of the ditch to the top, and deposit it in the rear of the shank 'A' which, by means of the elevated end of the mole 'C' entirely closing up the perforation made by the shank 'A' gives a better and stronger arch, owing to its peculiar shape, than any heretofore made." He then, in compliance with the patent law, describes his improved mole plow so that a mechanic could build it. He then states what he claims as follows:

"The peculiar shape of the mole 'C;' by the forward movement of the mole 'C,' the earth is carried from the bottom of the ditch, by means of the terra ducts, from the point of the mole 'D' to the rear of shank 'A' and

pressed more densely by the increased earth coming in contact with the convex end of the mole 'C' in the rear of the shank 'A' in such a manner as to make a better arch and more durable than any heretofore made, leaving the bottom of the ditch almost entirely uncompressed; hence, I do not claim anything except the invention of the terra ducts 'B,' ending in the convex on the top of the mole 'C.'"

He claims the peculiar construction as described, of terra ducts on a mole plow with a shank and a convex heel. He claims terra ducts which commence near the front, pass along by the shank, and unite as one duct, and rise gradually so as to compress the dirt in the arch.

His invention consists in putting on his mole the terra ducts in this manner, to produce the arch in the way described. The first point for you to decide is, whether the plaintiff is the first inventor of this improvement.

The letters patent are prima facie evidence of this. If the defendants deny the priority of the invention, they must introduce evidence to rebut the presumption arising from the patent, and in such case, the plaintiff must produce other testimony to establish his priority.

In this case, the plaintiff introduces his patent, dated August 16, 1859. The defendants then prove by witnesses, that in 1853 or 1854, one of the defendants made a sort of model similar to that shown by the plaintiff. One witness saw him, the defendant, whittle one out in Iowa, and another saw it while riding in a wagon with one of the defendants in this state.

The statement of the witness is, in substance, that the form of the model was something like the plaintiff's. The model at this time rested on mere theory. We know nothing further of it until 1857, when Merrifield saw some experiments made by one of the defendants.

No more is heard of the defendants' invention until the issue of their patent in November, 1859, subsequent to that of the plaintiff. They do not account for their delay from 1857 to 1859, so that the defendants' proof to rebut the plaintiff's priority consists in the fact that there was a model made by them in 1853, shown to two witnesses, and that in 1857 they made an experiment with one constructed of wood. It is the right and privilege of a party, when an idea enters his mind in the essential form of an invention,—inasmuch as most inventions are the result of experiment, trial and effort, and few of them are worked out by mere will,—to perfect by experiment and reasonable diligence, his original idea, so as not to be deprived of the fruit of his skill and labor by a prior patent, if he is the first inventor. But there must be what we would consider reasonable diligence, looking at all the facts in the case. The defendants do not

explain their delay from 1853 to 1857, when nothing was done and the models were not reduced to practice. It is necessary, in order to prevent a man from having the benefit of his patent, that another person should first have discovered the thing and reduced it to actual practice. It is not pretended by the defendants that they reduced to actual practice the crude model of 1853. On the part of the plaintiff, we have evidence that in 1855 and 1856 he was making drawings of his invention and a model; that he explained the same to his son in 1857, and that in December, 1858, he actually made a model and casting of the mole; that he was continuously experimenting, and was trying to carry out his plan and reduce it to practice, and that he built and put in use his improvement in the winter and spring of 1859. That is all the proof on both sides as to the novelty. The preponderance of proof should be in favor of the plaintiff, but if they were jointly experimenting and equally meritorious, a doubt should be solved in favor of him who first obtains a patent.

Secondly. You must be satisfied that the invention is a useful one, and of this, slight evidence only is necessary. "Useful," in the patent law, is in contradistinction to "mischievous;" the invention should be of some benefit.

Thirdly. Have the defendants infringed the invention of the plaintiff?

Nos. 1, 2, 3 and 4 are respectively representations of the improvement used by the plaintiff and the defendants.

It is conceded that the defendants' patent does not claim the plaintiff's invention. Have they used it? If so, they have infringed, and the plaintiff is entitled to damages. The question, then, is as to the construction of the defendants' machine; and that resolves itself into the question whether the terra ducts of the two machines are substantially the same. All that is necessary is, that the defendants should use substantially the invention of the plaintiff, and not necessarily the precise form. Is the construction of the defendants' terra ducts substantially the same as in the plaintiff's machine? Do they operate substantially in the same way, and produce substantially the same result? If so, they infringe. You are to judge from the facts as proved, and from the statements of experts. The mere opinions of experts are not entitled to much weight, unless founded on good and satisfactory reasons. In many cases, the testimony of experts is somewhat colored with feelings of a partisan character. The statement of a fact by one who has seen a machine work, is better, if reliable, than the mere opinion of ever so scientific an expert. The question, too, is not whether the defendants' machine works the best, but does it use the plaintiff's invention? If so, the defendants are liable; if not, there is no infringement. If they operate substantially in the same way,—

whether the defendants' mole takes up more or less dirt than the plaintiff's, is of no consequence,—it is an infringement.

Fourthly. If you believe the defendants have infringed, the amount of damages is for you to determine.

The rule of damages I shall lay down in this case, as, perhaps, on the whole, being the most equitable under the peculiar facts, is, if you find for the plaintiff, that you should give him whatever profits, whatever benefits the defendants have received from the use of his invention. That is a measure of actual damages unattended with difficulty, because it is restoring to the plaintiff what justly belongs to him, and of which the defendants have deprived him.

The jury found for the plaintiff with $115.00 damages.