## INNIS v. OIL CITY BOILER WORKS.

*(Circuit Court, W. D. Pennsylvania.   January 29, 1885.)*

1. PATENTS FOR INVENTIONS—PUBLIC USE—SALE TO TEST MACHINE.
   A single sale, by an inventor, of a machine embodying his completed invention, more than two years before his application for a patent, will not render the patent void, where such sale is made for less than the value of the machine, without profit to the inventor, for the sole purpose of testing it, and with the understanding that it will be taken back if it does not work satisfactorily

2. SAME—PRESUMPTION.
   It being once shown that the use is experimental, then, upon the question of its reasonableness in point of duration, every presumption should be made in favor of the inventor.

In Equity.  *Sur* plea.

*James C. Boyce*, for complainant.

*Geo. H. Christy* and *J. K. Hallock*, for defendants.

ACHESON, J.   Doubtless a single sale by an inventor, in the ordinary course of business, of a machine embodying his completed invention, more than two years before his application for a patent, will defeat his right thereto, and may be shown in bar of a suit for infringement.   And it may well be that such consequence will not be averted by the mere condition in the contract of sale that the purchaser shall have the right to return the machine and take back the price should it fail to work satisfactorily.   *Henry* v. *Francestown Soap-stone Stove Co.* 17 O. G. 569; S. C. 2 FED. REP. 78.   But the proofs here show that the one sale relied on to support the plea was not only characterized by that condition, but was otherwise exceptional.   It was made at an underprice, and without profit to the seller.   Moreover, I am persuaded that the sale was made for the purpose of securing a fair test of the invention.

The plaintiff's improved engine was designed especially for drilling and operating oil-wells.   The one he sold to Rosenfield & Guyer was the first of the kind he had built, and the only one up to that time.   "Running light," doing no work, at his shop, it was apparently a success; but it could not be satisfactorily tested there.   Experienced machinists and oil producers, who there examined it, were doubtful of its practical working in drilling; and they expressed the opinion that the piston-valve would soon work loose (resulting in a leak of steam and loss of power) by the cutting and wearing away of the valve and valve-bore; and so firmly convinced of this defect were they that they would not give the engine a trial, even at the plaintiff's expense.   The objection went to the practical efficiency of the engine to perform the service for which it was mainly designed.   Now, obviously, the only way to determine whether or not the objection was well founded was to put the engine to work at an oil-well, and keep it at work there a sufficient length of time.   Mr. Hamor, a member of the purchasing firm, was an expert in sinking oil-wells and in the care

of machinery, and it was one of the terms of sale that he would give his personal attention to the running of the engine, and thoroughly try it at the well, and report to the plaintiff if he found anything wrong with it. To secure such thorough trial was the principal inducement with the plaintiff to make the sale. Upon the whole evidence it is plain that the transaction was altogether experimental; therefore the invention was not "in public use, or on sale," within the meaning of the statute. *Birdsall* v. *McDonald*, 1 Ban. & A. 165; *Elizabeth* v. *Pavement Co.* 97 U. S. 126; *Campbell* v. *Mayor, etc.*, 9 FED. REP. 503; *Graham* v. *Geneva Lake Manuf'g Co.* 11 FED. REP. 138; *Graham* v. *McCormick*, Id. 859. Nor am I prepared, under the proofs, to accept the view that the trial was unreasonably prolonged. The inventor swears that he regarded a year's actual use as necessary to obviate the objection that had been raised to his invention. The sequel shows that he was right; for even after more than a year's use of the engine at Rosenfield & Guyer's well, he experienced great difficulty in effecting other sales on account of a lack of confidence among oil operators in the durability of the engine. The fact that at the end of about 10 months he began patterns for the engines he built in the fall of 1875, is a circumstance too equivocal to justify the conclusion that the success of the engine was then fully assured, even in his mind. It being once shown that the use was experimental, then, upon the question of its reasonableness in point of duration, every presumption should be made in favor of the inventor. The plea must be overruled; and it is so ordered.