## YATES *v.* HUSON.

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE; REASONABLE DILIGENCE.

1. While the policy of the patent law is to require diligence in adapting and perfecting inventions on the part of those who wait and work to that end, yet at the same time it is also to encourage those efforts to such a degree as that their merits and value may be practically tested before application for patent.

2. Under sec. 4920, R. S. U. S., requiring one who contests the validity of a patent on the ground of prior conception, to show that the patentee "surreptitiously or unjustly" obtained the patent, it is not necessary that actual fraud and theft of the idea by the patentee should be shown.

3. Where the testimony in an interference case between H., an applicant for a patent, and Y., the patentee, showed that H. first conceived the invention and was using reasonable diligence in adapting and perfecting it at the time of Y.'s conception, it was *held* that H. must prevail as against Y., although H. failed to reduce to practice until after Y. had filed his application.

4. In such a case the "reasonable diligence" required by the statute, need not necessarily begin with the original conception and continue unbrokenly until reduction to practice. It is only necessary that such diligence should antedate the inceptive invention of the rival inventor, and continue until reduction to practice.

No. 42. Patent Appeals. Submitted January 14, 1896. Decided February 18, 1896.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Poole & Brown,* (*Mr. Anthony Pollok, Mr. Philip Mauro* and *Mr. C. Clarence Poole* being with them on the brief), for the appellant:

1. Where an interference contest is between an application and an issued patent granted before the filing of such application, the applicant cannot prevail unless he shall be able to establish facts of the same kind that are required to defeat an existing patent if set up in defence of a suit for infringement of the patent, namely, that the alleged prior invention preceded the invention of the patentee in the sense that it was embodied in such practical form as to demonstrate its operativeness prior to its reduction to practice by the patentee. *Wheeler* v. *Chenowith,* C. D. 1869, 43; *Richardson* v. *Denza,* Id. 1870, 156; *Duchemin* v. *Richardson,* Id. 31; *Sargent* v. *Burge,* Id. 1877, 62; *Berry* v. *Stockwell,* 9 O. G. 404; *Dixon* v. *Moyer,* 7 Fed. Cas. 758; *Loom Co.* v. *Higgins,* 16 O. G. 675; *Ellithorpe* v. *Robertson,* 4 Blatch. 307; *Coxe* v. *Griggs,* 1 Biss. 362; *Brodie* v. *Mining Co.,* 5 Sawy. 608; *Colt* v. *Arms Co.,* 1 Fish. P. C. 108; *Allen* v. *Hunter,* 6 McLean, 303; *Octell* v. *Stout,* 29 O. G. 862, and cases cited; *Signal Co.* v. *Signal Co.,* 6 Fed. R. 603; *Jones* v. *Sewell,* 3 Cliff. 563; *Graham* v. *Piano Co.,* 33 Fed. R. 917; *Reiter* v. *Jones,* 35 Fed. R. 421; *Machine Co.* v. *Brown,* 36 Fed. R. 317; *Eagle Co.* v. *Miller,* 41 Fed. R. 351; *Valve Co.* v. *Valve Co.,* 52 Fed. R. 314; *Glen Co.* v. *Brooks,* 19 Fed. R. 426; *Johnson* v. *Root,* 2 Fish. P. C. 291.

The only exception recognized by law to this rule is that provided for by sec. 4920, R. S. U. S., when the patentee has "surreptitiously or unjustly obtained his patent" for an invention conceived by another who was using due diligence in adopting and perfecting it, in which case it is provided that it shall be a sufficient defence to a suit under the pat-

ent to show that the patentee had surreptitiously or unjustly obtained the patent under such circumstances.

The words "surreptitiously or unjustly" imply fraud or false suggestion, and require that a showing of craft or stealth on the part of the patentee be made in order to invalidate a patent under this provision of the statute. In no case where the defendant has not set up the defence of fraudulent appropriation of ideas, under section 4920, has the defence of prior invention been held sufficiently established except by proof of completion of the alleged prior invention before reduction to practice by the patentee. Needless to say that in this case, where Huson has attempted to show appropriation of the invention by Yates and failed in the effort, the provision of said section 4920 does not apply, and it is necessary to show actual reduction to practice by Huson in order that he may prevail against Yates, the first to reduce to practice. *Mfg. Co.* v. *Renchard*, 9 Fed. R. 293 ; *Parkhurst* v. *Kinsman*, 1 Blatch. 488 ; *Phelps* v. *Brown*, 4 Blatch. 362 ; *Cahoon* v. *Ring*, 1 Cliff. 592 ; *Stephens* v. *Salisbury*, 1 MacA. 379.

2. In any contest between rival inventors, the first to reduce the invention to practice in operative form is entitled to the patent, unless his opponent, being the first to conceive, exercised diligence in the development of the invention *from the date of his original conception* down to the date of his reduction to practice.

3. In a contest between a patentee on the one hand and an applicant on the other, when the applicant was first to conceive and the second to reduce to practice, the applicant cannot prevail unless it shall be made to appear that he was persistently and unremittingly diligent in bringing the invention into form for actual use and in obtaining a patent, and the applicant on whom the burden is thrown of establishing such diligence cannot prevail on a showing that he made no efforts on his own motion toward these ends, but that he rested supinely and awaited the action of others. *Savary* v. *Lauch*, 1 MacA. P. C. 691 ; *Ellithorpe* v. *Robertson*, Id. 585 ;

*Christie* v. *Seybold,* 55 Fed. R. 69; *Wright* v. *Postel,* 44 Fed. R. 352; *Millward* v. *Barnes,* 11 O. G. 1060; *Brookfield* v. *Brook,* 4 O. G. 81.

*Mr. Louis W. Southgate* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

First. This is an appeal from the decision of the Commissioner of Patents in an interference proceeding between parties claiming the same invention in a mechanical movement applied in the more speedy and efficient working of printing presses.

The first application for a patent was filed by the appellant, William B. Yates, November 9, 1891, accompanied by drawings disclosing his invention, and a patent was issued to him March 22, 1892. Nine days after the grant of this patent—viz., March 31, 1892—the appellee, Winfield S. Huson, filed his application for practically the same invention. Pending this application, on July 25, 1892, Yates filed an application for a reissue.

The interference was declared in the Patent Office November 5, 1892, as involving the following subject-matter; and the issue has been joined thereon:

" In a mechanical movement, the combination with the reciprocating bed or member, of a controlling member adapted to be periodically connected to the bed to control the motion thereof, and means for imparting a positive to-and-fro motion to this controlling member."

Priority has been awarded to Huson on the hearing before each tribunal of the Patent Office—viz., the primary examiner, the examiners in chief, and the Commissioner.

Second. We do not find it necessary to review the lengthy report of the evidence set forth in the record, because there is now little or no controversy between the parties as to the important facts established thereby. The decision must turn upon questions of law. Before proceeding to these it will be necessary to state some of the important facts which are found or conceded to exist:

1. Huson was the first to conceive the invention.

2. Yates has never reduced the invention to actual practice; but his application for patent must be taken as the legal equivalent thereof.

3. Huson at the time of Yates' conception was using reasonable diligence in adapting and perfecting the invention which resulted in the construction and successful operation of a press worked by his movement. Success achieved, he filed his application nine days after the patent had been issued to Yates.

Third. The general question to be decided is thus submitted by the appellant:

" Huson, having failed to reduce his conception to practice until after Yates had filed his application for patent fully illustrating and describing an operative embodiment of the invention, can he now prevail as against Yates and defeat the patent of the latter?"

His contention hereunder embraces three propositions that may be stated as follows:

1. Huson cannot prevail in this contest unless able to establish facts sufficient to defeat the patent of Yates in an action for infringement.

2. To defeat the patent the invention of Huson must have preceded that of the patentee—" in the sense that it was embraced in such practical form as demonstrated its operativeness prior to its reduction to practice by the patentee."

3. To avail himself of the appropriate ground of defence provided in actions of infringement, Huson must show that Yates has " unjustly and craftily, covertly or by stealth " obtained a patent for that which was known by him to have been the inventive conception of Huson. The ground of defence here referred to is the second in the order named in the statute and is—" that he had surreptitiously, or unjustly, obtained the patent for that which was in fact invented by another who was using reasonable diligence in adapting and perfecting the same." R. S., sec. 4920.

The first of the foregoing propositions is conceded. The

second may be treated; in so far as this case is concerned, as embraced in the third, which is the one upon which the decision must turn.

Before proceeding to the consideration of the important question involved in that proposition it is proper to allude to another point that has been made in the case. An attempt was made to show that Yates was not an inventor at all, but that he had obtained his knowledge from an inspection of the model made by Huson and an explanation of the same by him. Laying aside the direct testimony of the parties, there is some evidence tending to sustain the charge, but found as it is in depositions taken without strict regard to the rules of evidence it is not of that conclusive character which would compel us to find that Yates had in fact appropriated the conception of Huson.

Returning now to the main question, we are constrained to say that, notwithstanding the very able and ingenious argument in support of appellant's contention, we have not been convinced of its soundness.

In the first place, the construction claimed for the second notice of defence in section 4920 would have the effect to crowd the Patent Office with applications for patents for hasty, crude, and incomplete inventions, whereas the general policy of the law is or would seem to be, whilst requiring diligence in adapting and perfecting inventions on the part of those who wait and work to that end, to at the same time encourage those efforts to such a degree as that their merits and value might be practically tested before application for patent. *Agawam Co. v. Jordan,* 7 Wall. 583, 607 ; *Hubel v. Dick,* 28 Fed. Rep. 132, 140 ; *Reed v. Cutter,* 1 Story, 590, 600.

In the second place, the argument is founded on the word " surreptitiously," taken in its usual signification, and completely ignores the alternative word " unjustly," that follows immediately after.

The former word was first used in the 5th section of the act of 1790, which provides a way to repeal patents " ob-

tained surreptitiously or upon false suggestions" (1 U. S. Stats. 111), and this was repeated in the 10th section of the act of 1793. (Id. p. 323). Section 6 of the last-named act defines certain defences in actions for infringement of which notice must be given substantially as follows: That the description of the patentee was deceptively made; that it was not originally discovered by the patentee, but had been in use or described in some public work anterior to the supposed discovery of the patentee, or that "he had surreptitiously obtained a patent for the discovery of another person."

The act of 1836 (5 U. S. Stats. 117, 123) changed this last into what is now the second notice of defence in section 4920, Revised Statutes, that reads as follows:

"That he had surreptitiously or unjustly obtained the patent for that which was in fact invented by another who was using reasonable diligence in adapting and perfecting the same."

A learned author's view of the history of this transposition of the word "surreptitiously" is that the word has thereby "lost its former significance and become the equivalent of unjustly" (3 Rob. on Pats., sec. 960, note 1), because "no fraud or deceit is necessary to render void a patent obtained by a later true inventor when the first inventor is complying with the obligation of diligence imposed upon him by the law."

Whether that view of the change wrought in the meaning of the word "surreptitiously" be correct or not, it seems clear to us that in the careful recasting of the notices of defence the word "unjustly" was not added carelessly or without a special purpose.

The words are not synonymous, and though "unjustly" may include the idea of a thing done fraudulently, and secretly as well, its ordinary meaning is, contrary to justice or that which is right. If Yates had stolen the invention, or any material and substantial part thereof, from Huson, the latter would be fully protected under the terms of the fourth notice of defence.

Now, assuming that Huson, being the first inventor, had prosecuted with diligence and had also filed his application before Yates's patent issued, it is too plain for argument that an interference declared between applications must have been decided in Huson's favor. The patent having issued, however, before Huson made application, is the situation so completely changed as that Huson must lose his just right unless he can show that Yates, knowing that he was the first inventor and that he intended as soon as his invention might be perfected to apply for a patent, stole into the Patent Office, and by actual fraud, obtained that to which he knew he had no just claim? We think not. Assuming that Yates was a true independent inventor, utterly ignorant of Huson's prior conception and diligent efforts to reduce to actual practice, he had the right to file his application without having tested the practicability of his invention or in any way reduced it to practice and to prosecute the same to the issue of patent, and it could not be said that he had obtained the same surreptitiously or by unfair practices; but it does not follow as a necessary consequence that he can retain an advantage so obtained when it is made to appear intrinsically unjust. To permit him to do so would, in our opinion, violate the spirit of the law, for, as we have said before, the law tolerates at least, if it does not encourage, delay on the part of inventors in order that they may perfect their inventions and obtain reasonable evidence of their merits. All that is required is that they shall prosecute their labors with reasonable diligence, and that diligence is a matter to be determined by the special circumstances of the particular case. If, then, the law permits an inventor to adapt and perfect his invention before applying for a patent, and while he was using reasonable diligence in so doing another and subsequent inventor hurried into the office without having made a model, much less a machine capable of work, and thereby, although without fraudulent intent, obtained the patent, would it not nevertheless have been " unjustly obtained for that which was in fact invented

by another who was using reasonable diligence in adapting and perfecting the same"? We think so, clearly, and must therefore so hold.

The conclusion at which we have arrived is in accord with what we understand to be the doctrine deducible from a number of decisions, and has the support of learned writers on the patent law. *Reed* v. *Cutter*, 1 Story, 590, 600; *White* v. *Allen*, 2 Fish. 440, 446; *Hubel* v. *Dick*, 28 Fed. Rep. 132, 139; *Coxe* v. *Griggs*, 1 Biss. 362; *Ellithorpe* v. *Robertson*, 4 Blatchf. 307, 310; Curt. on Pats., secs. 396–7; 3 Rob. on Pats., secs. 960 and 995.

Fourth. It remains now to consider the last question to be decided.

We have already said, and it is unnecessary to review the evidence sustaining the conclusion, that at the date of Yates's conception Huson was and for some time had been using reasonable diligence in adapting and perfecting the invention. This was continued to actual reduction to practice, manufacture, and sale of a press worked by the movement, and culminated in the application for patent upon which this interference has been declared.

It is now claimed that Huson conceived the invention in 1883, and then, after eight years of inactivity, took it up again in April, 1891, and from which time his diligence dates. Upon this it is contended that the diligence contemplated by the statute must begin with the original conception and continue until reduction to practice, actual or constructive, and that its continuity once broken a subsequent renewal is of no avail, although it may clearly precede the date of the rival claimant's conception.

A mere vague or general idea of a device or mechanism to supply a possible want or of a desirable improvement in an existing machine is not invention. The idea must be developed until the mental process shall have been completed and brought to the point where reduction to practice can begin. 1 Rob. on Pats., sec. 376 *et seq.*

Tested by this general rule, it might well be held that

Huson did not conceive the invention in controversy until April, 1891. The only evidence tending to establish the earlier date is found in his preliminary statement and in his own testimony as a witness. In that statement he says he conceived the invention in 1883, made a rough sketch, and explained it to others. Testifying, he said that having seen a sketch of a patent to one Larkin he made a rough sketch of his invention on a common pad, which, after being shown to two fellow workmen, was thrown into the waste-basket; that he recently inquired of those men and found they had entirely forgotten the occurrence, and that nothing more was done until April, 1891, when he made a sketch embodying his idea, with some departure from the first one. About that time the necessity for an improvement in the speed of printing presses had become an urgent one to the manufacturers by whom he was employed.

If Huson had to rely upon that evidence to antedate the conception of Yates, it would clearly be insufficient; but treating his preliminary statement as representing his pleading in the case, which in a certain sense it is, and taking the allegation of conception therein broadly made as true, it becomes necessary to determine whether he must lose his right to the invention because of his evident lack of diligence between 1883 and 1891.

In our opinion all that is necessary in the case of the prior inventor is that he shall have begun and prosecuted with diligence the work of adapting and perfecting his invention before the date of his rival's conception.

The words of the law " was using reasonable diligence " refer to the very time of the second conception. To show that his diligence only began with that date would not be sufficient; but we see no good reason why he should be compelled to extend it back to the date of his original conception unless he desires for other purposes to connect himself therewith.

While it is to the interest of the public and in accord-

ance with the general policy of the patent law that inventions should be developed and brought into use with reasonable speed, we cannot think that the law contemplates the forfeiture of the inchoate right of property which it recognizes in a person who may have conceived an invention simply because he has not been diligent to reduce it to practice. The just and, as we think, sole penalty that he must pay for his inactivity is the loss of his inchoate right in favor of a subsequent and *bona fide* inventor who, having entered the unoccupied field, shall have reduced his conception to practice.

One may have a conception of what may prove to be a useful and valuable invention and yet fail to follow it up from want of time or means or because unconscious of the importance of the discovery and of its probable commercial value then or in the future. Subsequently time and means may be at his disposal and with favorable opportunity bring the idea into mind again, and through advances in the art and changed conditions generally the utility and commercial value of the invention may suddenly be revealed to him. If he then begins and continues with reasonable diligence to adapt and perfect his invention, we can see no sound or just reason why he should not be permitted to rest his claim of diligence upon the date of his own second conception, so to speak, in a contest with another, who, stimulated by the same suddenly apparent promise of profit, has since conceived the same invention.

This view has apparently prevailed for some years in the practice of the Patent Office and was asserted in the opinion of the Commissioner in this case. In the case of *Christie* v. *Seybold*, 54 O. G. 957, 962, Mr. Commissioner Mitchell, after an exhaustive review of the decisions of the courts and of former Commissioners, sums up his conclusions as follows :

" A review of all the cases in connection with the language of the statute satisfies me that if the first person to conceive would prevail over his rival, who has first reduced

the invention to practice, he must show that he was using reasonable diligence in adapting and perfecting the invention when his competitor entered the field.   He must show that his diligence antedates the inceptive invention of his rival if he would prevail over him, and he must show that his diligence extends back to his own conception if he would carry his invention back to the date of that conception.   Cases exist where the first person to conceive is not entitled to be accredited with diligence extending back to his actual date of conception.   In such cases it is probably only material to inquire whether the diligence which the statute calls for antedates the inceptive invention of the person first to reduce to practice.   But it is material and necessary that the diligence antedate the independent conception of the rival inventor as otherwise no injustice would be done by recognizing the case as coming within the general rule that the first to reduce to practice is the first inventor."

In the same case, coming before the Court of Appeals of the Sixth Circuit on a bill in equity to compel the issuance of a patent under section 4915, Revised Statutes, the opinion of the Commissioner was referred to with general approval, although this question, it must be admitted, was not involved.   *Christie* v. *Seybold*, 64 O. G. 1650; 55 Fed. Rep. 69, 76.

Without further discussion, our conclusion is that there is no error in the proceedings, and that the decision appealed from must be *affirmed.   It is so ordered, and the proceedings here will be certified to the Commissioner of Patents, as required by law.*