## J. E. HANGER, Inc., v. J. F. ROWLEY CO.

(Court of Appeals of District of Columbia. Submitted February 8, 1924.
Decided April 7, 1924.)

No. 4012.

1. Patents ☞328—961,165, for artificial limb suspender and back check, held valid and infringed.
Patent No. 961,165, to Rowley, for an artificial limb suspender and back check, issued June 14, 1910, *held* valid and infringed.

2. Patents ☞83—Mere delay in filing application not abandonment.
Mere delay in filing application is not abandonment, but merely an assumption of the risk that some inventor might forestall applicant.

3. Patents ☞75—More than fugitive construction must be shown to invalidate patent.
While a single successful use of the device for the requisite period is sufficient to invalidate a patent, something more than a fugitive construction must be shown.

Appeal from the Supreme Court of the District of Columbia.

Infringement suit between J. E. Hanger, Inc., and the J. F. Rowley Company. From the decree rendered, the first-named party appeals. Affirmed.

Percy H. Moore and Harry E. Knight, both of Washington, D. C., for appellant.

William R. Rummler, of Chicago, Ill., for appellee.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. This is an infringement suit, involving patent No. 961,165, issued to appellee, Rowley, June 14, 1910, for an "artificial limb suspender and back check." The trial court found claims Nos. 2, 3, 6, 8, 9, 11, and 12 valid and infringed by the appellant corporation.

[1] In his specification Rowley says:

"The main objects of this invention are to provide an artificial limb and suspender embodying the invention described in my patent No. 644,464, but in which the connection between the suspender and the leg section, whereby the latter is moved on its knee joint, is made through the interior of the thigh section, instead of being made outside of the knee joint, as in the specific form of said invention shown in the drawing forming part of the specification of said patent, and to provide a suitable form of back check and connection between the back check and the suspender, whereby the leg section may be moved forward on its pivotal connection with the thigh section."

It thus becomes important to determine the scope of Rowley's earlier patent, Figures 1 and 2 of which we here reproduce, together with Figures 1 and 2 of the patent in suit:

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

FIG.I. FIG.2.

This earlier patent, like the one in suit, covered artificial limbs for amputations above the knee, or so-called thigh amputations. ' Rowley was a manufacturer of artificial legs, and thoroughly familiar with the prior art. It was old to hold the thigh section in position by shoulder straps, attached thereto in front and rear, but these were carrying straps and nothing more; that is, they had no connection with the shin or lower leg section, except such as was inherent in the knee-joint. To aid in the control of the shin, various devices had been employed, but prior to Rowley no one had united into one device the old carrying straps and the operating shin straps in such a way as to permit the control of the shin section by the raising or lowering of the shoulder.' This earlier patent was before the Circuit Court of Appeals for the Sixth Circuit, in Rowley Co. v. Columbus Pharmacal Co., 220 Fed. 127, 136 C. C. A. 81, where the court pointed out that Rowley, by carrying the lower end of the suspender farther down to a point of front adjustment to the shin, had united in one strap the former functions of two, and that in addition, which the court regarded as of greater importance, he had provided a sliding connection with the shin, which permitted the carrying strap to accommodate itself to the wearer's motions, just as freely as before. The court then said:

"We are satisfied, also, that Rowley's real invention did not lie in any specific arrangement of the cords or straps or guides or pulleys. These details of his device involved only skill and experience in exact places of attachment or precise selection of form. The real inventive thought was that the sliding carrying cord could reach down and be, by a sliding connection operatively united to the shin."

In other words, prior to Rowley no one had successfully controlled the lower leg or shin section from the shoulder. Rowley made this result possible, and it was held that he was entitled to such an interpretation of his claims as to protect his real invention. The analysis of the patent is so clear and convincing that we adopt the conclusion there reached without further discussion.

[2] In June of 1900 Rowley discussed with certain employees the feasibility of having the lower extension of the suspender loop pass inside the thigh section, and to have such an operative connection with the shin section as to make possible even better control of the shin section than could be had through the outside connection provided in the earlier patent. As a result of this discussion Rowley constructed what is known as the "Sexton leg," which contained a back check substantially the same as that disclosed in Figure 1 of the patent in suit. The lower extension of the suspender passed through the thigh section, as in Figure 2, and attached to the forward extension of the back check, as in Figure 1. It was found that the shin section was controllable through tension of the suspender. Before delivering a leg to a customer, the inside connection was eliminated, and the connection of the earlier patent substituted. Rowley gives as his reason that the earlier patent covered broadly the idea of shin control, and that it was not then believed that the cords employed in the inside control would be as durable as the leather straps on the outside. Subsequently, on October 15, 1906, Rowley filed his application. While it has been suggested that his conduct amounted to an abandonment of this invention, the evidence indicates the contrary. Rowley did not stop with a mere conception of this invention, but put that conception into concrete form, and demonstrated it to certain of his employees. In the circumstances, it was not strange that he should delay the filing of an application. By so doing he merely assumed the risk that some independent inventor might forestall him, but mere delay is not abandonment. We rule, therefore, that appellant has not sustained the burden of proof on this question. See Computing Scale Co. v. Automatic Scale Co., 26 App. D. C. 238, affirmed in 204 U. S. 609, 27 Sup. Ct. 307, 51 L. Ed. 645; Kellogg Switchboard & S. Co. v. International Tel. Mfg. Co. (C. C.) 158 Fed. 104; Victor Talking Machine Co. v. Duplex Phonograph Co. (C. C.) 177 Fed. 248.

We come now to a determination of the scope of the patent in suit. While the earlier patent covered broadly the idea of the combination of the carrying suspender and operating suspender, so as effectually to control the shin section by voluntary movement of the shoulders, the specific embodiment of that invention was an outside control; that is, a control resulting from attachment of the lower projection of the suspender to the outside of the shin section. By inspecting Figure 1 of the earlier patent, this embodiment will be seen at *17*. It is apparent that the straps *7* and *8* in the earlier patent, extending as they did over the knee, were subject to more or less friction and tension, particularly when the wearer assumed a sitting position; and while it now may appear a simple matter to pass the extension cords *9* of the patent in

suit through the thigh section at *10* and *so connect them* as to permit even greater control of the shin section through movement of the shoulders than was possible in the prior device, it is much easier to follow than to lead. It must be remembered, too, that it always is difficult in a mechanical device even to approximate the natural movements of the human body, and when we consider the various problems involved in this seemingly simple change, we pass beyond the realm of the mechanic into that of the inventor. The evidence leaves no room for doubt that in this later structure Rowley has made a distinct advance over his earlier device. Claims 2, 3, 11, and 12 of this patent purport to cover a combination effecting the control we have described by a connection "through the interior of the thigh section, instead of being made outside of the knee joint," while claims 6, 8, and 9 require that the extension loops *9* shall be operatively connected to a back check at a point within the thigh section. We reproduce in the margin claims 2 and 9, as illustrative of these two groups.[1]

Back checks per se were old, but that of Rowley is so designed as to perform the double function of a back check and a lever, to the upper arm of which the extension cords *9* are attached. It is in evidence, and an examination of the exhibits and drawings discloses, that Rowley's device would operate, even though the back check was severed at a point between *5* and *6,* as disclosed in Figure 1. The extension loops *9,* it will be seen, are connected with a forward projection of the back check at *8,* and in this way is obtained the leverage necessary to control the shin section. This extension is the element mentioned in claim 9 as "a lever mounted on said pivot," the pivot being the connection between the upper and lower leg sections. It thus appears that what Rowley had in mind was a combination of the elements set forth in his claims, in which the lower extensions of the suspender are so attached to a lever inside the thigh section as to make possible control of the shin section, as described. The patents to Collins (No. 295,675), Winkley (No. 371,239), Legran (No. 52,057), Monroe (No. 58,351), Frees (No. 401,426), and Richenbach (No. 41,238), relied upon here, were all before the court in Rowley Co. v. Columbus Pharmacal Co., 220 Fed. 127, 136 C. C. A. 81, where they were held inapplicable. They are no more

[1] "2. The combination of a thigh section pivotally connected together, a member extending upward from the leg section into the interior of the thigh section, and a suspender loop slidingly connected to said thigh section and adapted to pass over and be supported on the shoulder of the wearer, and having a connection to said upwardly extending member at a point inside said thigh section and removed from the axis of said pivotal connection."

"9. The combination with a thigh section and a pivot connecting the same, the thigh section being provided in its sides above said pivot with openings and in its rear side with a slot, a lever mounted on said pivot and having an upper arm arranged wholly within the thigh section and a lower arm extending downwardly through the slot of the thigh section into the leg section and secured to the latter, and a suspender having members which pass through the side openings of the thigh section and are secured to the upper arm of said lever, substantially as set forth."

applicable here than there, and are rejected for the reasons there assigned.

The patent to Morris (No. 803,922), issued November 7, 1905, prior to the filing of Rowley's application for the patent in suit, is cited as tending to limit the claims of the Rowley patent. In the Morris structure the lower extension of the shoulder straps are attached at the knee to fingers projecting from a knee joint rod, on the outside of the thigh section. There is no inside connection, therefore, within the meaning of the claims in issue. Nor do we think the Morris device any more suggestive of the present invention than the other references already discussed.

There was introduced in evidence what is known as the "Rome leg," which had been in use for many years. In this leg the suspenders are rigidly attached at their lower ends to the top of the thigh section. Attached to one side of the suspender is a strap, which extends through the thigh section and connects to the inside of the shin section below the knee, passing over the knee bolt, but not rigidly attached thereto. while the presence of this strap probably aided somewhat in the manipulation of the shin section, we think it apparent, without further discussion, that the two structures are inherently different and productive of different results.

[3] We come now to the so-called "Bauer leg." It appears that a leg was made for Mr. Bauer in 1900, and it subsequently was displaced by another leg of a different construction; the old leg having been thrown away. While there is room for doubt as to whether the reproduction corresponded to the original, we may assume that it did, without affecting our conclusion. In the first place, while a single successful use of a device for the requisite period is sufficient to invalidate a patent, something more than a fugitive construction must be shown. See Consolidated Fruit Jar Co. v. Wright, 94 U. S. 92, 24 L. Ed. 68, and W. & M. Mfg. Co. v. Beat 'Em All B. Wire Co., 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154. Here we are convinced that, but for this suit, the original "Bauer leg" would have been entirely forgotten. The invention, therefore, would have been lost to the public, even if assumed to reside in this leg. As to the Exhibit Bauer Leg, the back part of the suspender is rigidly attached to the top of the rear portion of the thigh section. The front extensions of the suspender pass inside the thigh above the knee and are attached to the back check below the knee. In our view, this connection does not even remotely suggest the construction of the issue, nor is it possible through it to achieve even approximately the result obtained by Rowley. While Rome and Bauer disclose an inside connection, neither discloses an inside shoulder control.

Rowley's earlier or 1900 patent expired in 1917 and then became public property. Notwithstanding this fact, the appellant company elected to manufacture and sell artificial legs embodying the so-called inside control. We here reproduce an illustrative drawing of Hanger Company's Exhibit No. 1, where substantially the same control as in Rowley is obtained:

Fig. 1.

The upper and lower leg sections are pivoted at *4*. Above the pivot are openings in the outside of the thigh section to receive the lower extension of the suspender loops. Mounted on and rigidly attached to the knee pivot is a lever, arranged wholly within the thigh section, and to this lever is attached, through the medium of the link, *8a*, the lower ends of the suspender extensions. But the mere fact that there is a link connection between the lever and the suspender extensions is quite immaterial, for the purpose and effect are the same. In the Rowley structure the lever, as we have seen, is an extension of the back check, and although Hanger's Exhibit 1 shows a back check not directly attached to the knee pivot, this does not avoid the claims. The function of the back check is exactly the same, and its presence or absence does not affect the real invention, namely, the lever attachment. In its Exhibit 4 the Hanger Company has more closely copied the essential elements of the Rowley device, for there the back check is attached to the knee pivot, and the lever and suspender attachment are the same as in Exhibit 1. We need not consider Hanger Exhibit 3, since it does not differ materially from the one last discussed.

We think it apparent, from what we have said, that, unless the claims of the Rowley patent are to receive an interpretation that will embrace the Hanger structures, the patent will be valueless and the inventor deprived of his reward. In our view, there is no real difference between the structures of the two parties. Rowley blazed the trail while Hanger closely paralleled it, and now seeks to claim credit where none is due.

It results that the decree below is affirmed, with costs.

Affirmed.