**Robert C. WATSON, Commissioner of Patents, Appellant,**

v.

**Thomas J. ALLEN, Appellee.**

**No. 14066.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 19, 1957.

Decided April 3, 1958.

**344**

Mr. S. W. Cochran, Atty., U. S. Patent Office, with whom Mr. Clarence W. Moore, Sol. U. S. Patent Office, was on the brief, for appellant.

Messrs. A. Yates Dowell and A. Yates Dowell, Jr., Washington, D. C., for appellee.

Before PRETTYMAN, BAZELON and BURGER, Circuit Judges.

BURGER, Circuit Judge.

From an adverse decision in the Patent Office, appellee invoked the jurisdiction of the District Court under 35 U.S.C. § 145, where the issue of patentability of his invention was tried de novo. The District Court rejected Patent Office claims that the invention had been in non-experimental public use, and authorized the Patent Office to issue a patent.

█ A person is not entitled to a patent where "the invention was * * * in public use * * * more than one year prior to the date of the application for patent. * * * "[1] An exception

to this is recognized and "public use" is no bar to patentability where that use was incidental to experiment.[2] The issue on this appeal is whether the District Court erred in finding that the prior use of the invention was incidental to experiment, contrary to the findings of the Patent Office.

The invention is a shim, which is a thin metal plate designed to be inserted between an engine bearing and bearing holder so as to compensate for wear in the bearing, thus reducing oil consumption in worn automobile engines. In 1939, appellee installed a set of his shims in his 1934 Oldsmobile, for the purpose of experiment. After investigating their performance, he stopped using the car. With minor exceptions, the car lay idle for a year, finally being sold for $75 in 1942, still containing the shims. Appellee did not tell the buyer of their presence, and made no effort to follow up performance of the shims in the hands of the purchaser. The car passed to several other owners, none being aware of the shims. Appellee continued to improve the design of the shims, working on other models, and in April 1946 applied for a patent. After extended proceedings his application was denied because the Patent Office found (1) his shims had been in public use, in that members of the public (the car buyers) had used the shims without any restrictions, even though unwittingly; and (2) such public use was not incidental to experiment, because after the sale, appellee did not actually experiment with those shims. The Patent Office apparently would have required appellee either to remove the shims when he was finished experimenting with them, or else apply for a patent within one year after he sold the car containing them.

The trial court found that the use of appellee's invention "was experimental and did not constitute public use regardless of whether he removed them or not. Further, his continued efforts to make

1. 35 U.S.C. § 102(b).

2. Elizabeth v. American Nicholson Pavement Co., 1877, 97 U.S. 126, 24 L.Ed. 1000.

shims which would be an improvement over those he had installed likewise was experimental and this experimental period extended to a date less than one year prior to the filing of his application." The trial court relied on Goodwin v. Borg-Warner Corp.,[3] also known as the Daukus case, wherein the inventor installed an improved clutch in a friend's car without profit. The use was held experimental, and the fact that the car was later sold to a stranger, apparently without restriction, did not constitute a non-experimental public use. The Patent Office relies on a case precisely contra, which was handed down by the Court of Customs and Patent Appeals a few days after the decision of the court below.[4]

■■■ The statutory term "public use" has been given an extraordinarily broad meaning. In Egbert v. Lippmann,[5] the Supreme Court found public use where the inventor had given a novel corset stay to a lady friend. Thus, the fact that there is but one user, or the invention is given without profit, or that it is hidden from the general public's eye, would seem to be immaterial. Nor need the user even realize he is using the invention.[6] It is immaterial that the use was without the inventor's consent, or that the use was due to factors not his fault and beyond his control.[7] It may be fair to conclude that public use exists where the invention is used by, or exposed to, anyone other than the inventor or persons under an obligation of secrecy to the inventor.[8] Under such sweeping interpretations, we have no choice but to conclude that appellee's shims were in public use, even though the buyer did not know of the presence of the shims in the car. Since this occurred more than one year before appellee applied for a patent, it might seem that the statute expressly bars a patent.

But such a strict and inflexible result is not necessarily so. The courts have engrafted onto the statute an exception, to the effect that public use does not bar a patent where that use was incidental to experiment. The leading case is Elizabeth v. American Nicholson Pavement Co.[9] There the inventor paved a portion of a toll road with improved wooden pavement. After the public had used the road for six years he applied for a patent. The public use was held not to bar patentability, because such use was incidental to experiment.

■■■ In order to understand the reason for the extremely broad construction of "public use," and the judicial exception read into seemingly absolute statutory words, it is necessary to examine the policy involved. The cases seem to be hospitable to the inventor *during the experimental stage* of his invention, but

3. 6 Cir.. 1946, 157 F.2d 267, certiorari denied 329 U.S. 799, 67 S.Ct. 491, 91 L.Ed. 683; 331 U.S. 860, 67 S.Ct. 1756, 91 L.Ed. 1866, rehearing denied 329 U.S. 835, 67 S.Ct. 631, 91 L.Ed. 707; 331 U.S. 796, 67 S.Ct. 1726, 91 L.Ed. 1823; 331 U.S. 869, 67 S.Ct. 1749, 91 L.Ed. 1872.

4. Application of Blaisdell, Cust. & Pat. App. 1957, 242 F.2d 779 which was a companion case to the instant case. This case criticized the Goodwin case as unsound.

5. 1881, 104 U.S. 333, 26 L.Ed. 755.

6. Hall v. Macneale, 1882, 107 U.S. 90, 2 S.Ct. 73, 27 L.Ed. 367.

7. Andrews v. Hovey, 1887, 123 U.S. 267, 8 S.Ct. 101, 31 L.Ed. 160. An exception

may exist where the idea was gained surreptitiously from the inventor. Shaw v. Cooper, 1833, 7 Pet. 292, 32 U.S. 292, 8 L.Ed. 689.

8. Use by persons under an obligation of secrecy to the inventor is probably not public use. See National Tube Co. v. Steel & Tubes, Inc., 3 Cir., 1937, 90 F.2d 52. Cf. Journeaux, Public Use in Private or Vice Versa, 23 J.Pat.Off.Soc'y. 514 (1941), who states "With due caution it may be considered that an invention is in public use when it is used openly by the inventor for its intended purpose and also when it is used by anyone beyond the control of the inventor." Cf. Note, Public Use: The Inventor's Dilemma, 26 Geo.Wash.L.Rev. 297 (1958).

9. 1877, 97 U.S. 126, 24 L.Ed. 1000.

become disposed to construe the law against him thereafter.[10] The judicial policy underlying this rule has been said to be that an inventor acquires an undue advantage over the public by delaying to take out a patent, inasmuch as he thereby preserves the monopoly to himself for a longer period than the law allows.[11] Of course, the inventor may, if he chooses, keep the invention secret unto himself, rather than apply for a patent, but he does so at his peril. After reduction to practice, unreasonable delay in applying for a patent may be construed to be an abandonment with the consequence that the public is entitled to rights in the invention.[12] Whether construed to be an abandonment or not, the inventor by his delay assumes the risk that he may be forestalled by a subsequent inventor.[13] Any sale of his invention may well bar the inventor.[14] And, as we have already seen under the stern rules laid down by the courts any public use whatever *after* the experimental period has ended will bar patentability.

■ On the other hand, the law also recognizes that the inventor may wish to perfect his idea before applying for patent, and indeed, it is in the public interest that he do so.[15] Hence, facts which may well be fatal to patentability *after* experimentation are frequently excused if they occurred *during* experimentation. A sale which is primarily for the purpose of experiment will not bar patentability.[16] During experiment, use by assistants under no obligation of secrecy will probably not bar a patent,[17] although after the experiments are ended, use or knowledge by assistants or workmen under no obligation of secrecy may well bar patentability.[18] Our conclusion is that the courts accord considerable hospitality to the inventor during the experimental stage. However, as a limitation, we note that this hospitality disappears even during the experimental stage when the "experimental motive" wanes, or is superseded by a profit motive, or is tainted by careless acts of the inventor.

■ We have already conceded that a public use existed here. But appellee's experiments continued up to within one year of his application for patent, and hence the public use occurred during the period of experimentation, and less than a year thereafter. The trial court so held, and there was evidence to support the finding. Consequently, we are bound to view the next question, whether the public use was incidental to experiment, hospitably to the inventor.

■ The Patent Office claims that the public use was not incidental to experiment because the inventor did not actually experiment with those very shims after the sale. There is force to this argument, but we believe that reasonable disposal of discarded prototypes

10. Cf. Cline Elec. Mfg. Co. v. Kohler, 7 Cir., 1928, 27 F.2d 638, certiorari denied 278 U.S. 646, 49 S.Ct. 82, 73 L.Ed. 559; Innis v. Oil City Boiler Works, C.C.W.D. Pa.1885, 22 F. 780; Jennings v. Pierce, C.C.Conn.1878, Fed.Cas.No.7,283; Spear v. Belsen, D.C.Cir.1859, 1 MacA.Pat.Cas. 699, Fed.Cas.No.13,223.

11. See Root v. Third Ave. R. Co., 1892, 146 U.S. 210, 224, 13 S.Ct. 100, 36 L.Ed. 946; Pennock v. Dialogue, 1829, 2 Pet. 1, 27 U.S. 1, 7 L.Ed. 327.

12. Saunders v. Miller, 1909, 33 App.D.C. 456.

13. J. E. Hanger Inc. v. J. F. Rowley Co., 1924, 54 App.D.C. 336, 298 F. 359.

14. Hall v. Macneale, 1882, 107 U.S. 90, 2 S.Ct. 73, 27 L.Ed. 367.

15. Kendall v. Winsor, 1858, 21 How. 322, 62 U.S. 322, 16 L.Ed. 165; Yates v. Huson, 1896, 8 App.D.C. 93.

16. In re Mills, 1905, 25 App.D.C. 377; see Hall v. Macneale, 1882, 107 U.S. 90, 2 S.Ct. 73, 27 L.Ed. 367.

17. See Mason v. Hepburn, 1898, 13 App. D.C. 86; Kendall v. Winsor, note 15 supra.

18. Electric Storage Battery Co. v. Shimadzu, 1939, 307 U.S. 5, 59 S.Ct. 675, 83 L. Ed. 1071; In re Tournier, 1901, 17 App. D.C. 481.

of a still-experimental invention must, viewed favorably, be considered as incidental to experiment. What amounts to a reasonable disposal depends upon the facts of each case, keeping in mind the physical nature of the device, and the likelihood that the method of disposal chosen will lead to discovery of the secret by the public in general.

Here the shims were minute, inexpensive, fragile (so that removal might have damaged them beyond further use), and had no salvage value. They were located deep in the heart of an old automobile engine, a place difficult of access and seldom opened to examination. The transferees of the automobile were not told of the presence of the shims, and they did not discover them in fact. There was little likelihood that they ever would be discovered except by one who dismantled the engine, and perhaps not even then. Even if discovered, it is not certain that the discoverer would have understood or recognized the purpose of the shims. Taken together, these circumstances made it reasonable that the shims be left in the car; this was a reasonable method of disposal in this case just as discarding might be in other cases, and falls short of being such carelessness as would taint the experimental motive which continued unabated throughout. We believe the protective umbrella of the experimental use doctrine should include reasonable disposal of models and prototypes of the invention once their usefulness to the inventor has ended—reasonable in view of the nature of the device and the probability of discovery and appropriation of the invention by strangers.

This conclusion, however, does not resolve the issues as to claimed public use of the same idea by a third person unknown to Allen. It is claimed by the Patent Office that one Blaisdell had also put into public use shims similar to appellee's device. If this use was public use, and was not incident to experiment, then the use of Blaisdell's shims "more than one year prior to the date of" appellee's application would bar appellee from securing a patent, at least as to the elements common to both inventions. Blaisdell performed work for used car dealers and in 1934 he installed his shims in three cars sent to him for repairs. He told the dealers what he had done, and kept in touch with the cars for several months, and in 1936, he applied for a patent. He prosecuted the application to allowance of a patent but forfeited for failure to pay the final fee. He resumed work on the shims, made improvements and in March 1945 again applied for patent. In September 1945 he placed his shims on the market. The trial court found that "Blaisdell's activities prior to one year before the filing of Allen's application were * * * experimental and not public use." For the reasons outlined in the discussion dealing with the appellee's use, i. e., that there is substantial evidence which supports the trial court findings, we affirm the finding of experimental use.

Our holding with respect to public use cannot be reconciled with that of the Court of Customs and Patent Appeals. We recognize the special competence of that court to deal with matters relating to patents and as to technical or highly specialized patent matters, we would accord substantial weight to its views. However, the issues presently involved are not technical or in any sense within the areas of special expertise; hence, the views of the Court of Customs and Patent Appeals are those of a coordinate appellate court having perhaps, approximately the standing of another circuit court of appeals; they are persuasive and entitled to deference, but are not authoritatively binding. On the other hand we are bound to treat the District Court's findings and conclusion in this matter as we would on any appeal, that is, as presumptively correct. While the result is by no means free from doubt, we think the fact findings of the trial court are not clearly erroneous, and

that the District Court correctly applied the law of public use.

Affirmed.

BAZELON, Circuit Judge (dissenting).

I would follow Application of Blaisdell, Cust. & Pat.App.1957, 242 F.2d 779, where, upon precisely the same facts presented here, the United States Court of Customs and Patent Appeals upheld a determination of public use by the Board of Appeals of the United States Patent Office.