SKIL CORPORATION, Plaintiff and Counter-Defendant,

v.

ROCKWELL MANUFACTURING COM-PANY, Defendant,

Lucerne Products, Inc., Substitute De-fendant and Counter-Plaintiff.

No. 70 C 1523.

United States District Court,
N. D. Illinois, E. D.

March 26, 1973.

Clarence J. Fleming, McDougall, Hersh & Scott, Chicago, Ill., for plaintiff and counter-defendant.

James Van Santen, Hill, Sherman Meroni, Gross & Simpson, Chicago, Ill., for defendant.

## DECISION AND ORDER

McMILLEN, District Judge.

The issues in the case have been reduced to Count I for infringement of certain claims of Frenzel Reissue Patent 26,781 and Count II for a declaration of invalidity of Matthews patent 3,389,365. The plaintiff Skil Corporation as owner of the Frenzel reissue patent contends that the defendant Lucerne Products, Inc. infringes Frenzel by manufacturing and selling a switch control device under Sahrbacker patent # 3,603,757 which defendant owns. 35 U.S.C. § 271(a). The defendant contends its devices do not infringe Frenzel and also that Frenzel is invalid because of non-obviousness and anticipation. For reasons to be discussed, we find that the presumption of validity of the Frenzel reissue patent remains intact on its claim 5 only.

Count II is a declaratory judgment action to declare invalid defendant's Matthews et al patent 3,389,365 on the grounds, *inter alia*, of a commercial sale and a publication more than one year before the filing date of August 23, 1965. A case or controversy exists because plaintiff is manufacturing devices which defendant contends infringe the Matthews patent. We find and conclude that the Matthews patent is invalid because it was dedicated to the public under 35 U.S.C. § 102(b).

Plaintiff alleges that the defendant is infringing the original claims 2, 3 & 5 contained in the Frenzel reissue patent. This invention consists of three primary elements which in combination distinguish it from the prior art. The first element is an adjustable assembly connected to the trigger which allows the range of the trigger's movement to be controlled. This correspondingly con-

trols the speed of the motor. The second element consists of a locking device whereby the trigger can be detained in any adjusted position. The third element is referred to in the claims as "catch means" carried by a lug, enabling the operator to finely adjust the motor's speed after the trigger is locked in an operating position. The patentee refers to this aspect of his invention as the "vernier" effect (see Frenzel patent, col. 4, lines 60–73).

■ The defendant attacks the Frenzel patent as merely a combination of old elements and therefore not entitled to patentability, citing A & P Tea Co. v. Supermarket Corp., 340 U.S. 147, 71 S. Ct. 127, 95 L.Ed. 162 (1950) and Toro Mfg. Corp. v. Jacobsen Mfg. Co., 357 F. 2d 901 (7th Cir. 1966). These cases do not hold, however, that a combination of old elements cannot result in an invention, but merely that a combination of old elements must be carefully scrutinized to determine their novelty. The issued patent retains its presumption of validity during this scrutiny.

■ The old elements in the case at bar are illustrated by Sparklin patent No. 2,525,839 and an Ingersoll-Rand pneumatic impact tool. The Sparklin patent, considered by the Patent Office in its original examination of the Frenzel invention, is similar in two significant ways to Frenzel: the trigger is used to control the speed of the mechanism and can be locked in position. This is what Claims 1 and 2 of Frenzel's patent consist of. Sparklin fails, however, to teach two of the three primary elements of Frenzel: the adjustable assembly and vernier "catch means". Sparklin's invention is incapable of achieving this result, but it does preclude Claims 1 and 2 of Frenzel's patent on the ground of obviousness, if not complete anticipation.

The Ingersoll-Rand pneumatic, variable speed tool is significant in that it teaches a screw adjusting means as part of the trigger control, precluding Claim 3 of Frenzel as obvious. However,

Frenzel's adjustable assembly is comprised of more than a simple screw to control the trigger's stroke. In order to carry out his vernier feature, it is essential that the catch means move relative to the trigger. This is accomplished by element 24 of the Frenzel device which carries the catch means and allows it to move relative to the trigger. The Ingersoll-Rand tool does not embody this feature, or the capability for finely adjusting the motor's speed once an operating position has been achieved.

Thus the prior art taught a locking means for a trigger and a means for varying the range of the trigger's stroke. It fails to suggest Frenzel's vernier adjustment and fails to teach the means necessary to implement such an idea. In particular, it is the unique combination of elements 24, 27 and 42 in connection with the trigger which results in the fine adjustment or vernier capability that we find totally lacking in Sparklin and the Ingersoll-Rand tool or any other prior art brought to our attention.

From the Sparklin invention of 1950 to Frenzel, the defendant has failed to show a single piece of prior art that has remotely suggested the vernier feature. We are satisfied, in light of this record, that Claim 5 of the Frenzel device, when taken as a whole, would not have been obvious to a person having ordinary skill in the related art at the time the invention was made. 35 U.S.C. § 103.

■ The plaintiff has also satisfied this court that the Frenzel patent has met with considerable commercial success. Although commercial success is not in itself a basis for establishing a patent's validity, it is a further indication of the patented feature's nonobviousness. Graham v. John Deere Co., 383 U.S. 1, 17, 18, 86 S.Ct. 684, 15 L.Ed. 2d 545 (1950).

■ Defendant also contends that certain employees of the Singer Co. developed a device anticipatory of Frenzel's in the Spring of 1965. This became Winchester et al patent No.

3,439,248 filed January 4, 1966, shortly after Frenzel's original filing. Singer has recently filed interference # 97,893 in the Patent Office claiming prior invention. 35 U.S.C. § 102(g). This court has declined to await the outcome of the interference proceeding, and defendant has filed depositions of certain Singer personnel herein. We find that these depositions do not establish priority of the Singer device by the weight of the evidence. They show that Singer's formal testing occurred in December 1965, considerably after the filing date of Frenzel's original application, and that the model allegedly constructed and operated by Singer personnel in the Spring of 1965 was never used to drill any holes, was never reduced to detailed production drawings or recorded in formal testing documents, and was inoperable at the time of the depositions in May 1971. Without purporting to rule on the merits of Singer's pending interference, since it is not a party herein, we find and conclude that defendant in the case at bar has not established that the Winchester invention was reduced to practice prior to Frenzel's device and therefore cannot be anticipatory. Cf. Corona Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 382–384, 48 S.Ct. 380, 72 L.Ed. 610 (1928).

■ Defendant's manufacturing under Sahrbacker patent No. 3,603,757, issued September 7, 1971, constitutes infringement of Frenzel's Claim 5. Frenzel and Sahrbacker use almost identical elements in every material respect. The only significant difference between them is in the type of electrical switches used by each, and concededly they are not part of either invention. Based on the evidence produced at trial and an examination of the two patents, which the parties agree illustrate and describe the devices, this court finds that the Sahrbacker device performs substantially the same function in substantially the same way to obtain the same result as Frenzel's Claim 5 and therefore infringes it.

Standard Industries v. Tigrett Industries, 397 U.S. 586, 90 S.Ct. 1310, 25 L. Ed.2d 590 (1970); Graver Tank v. Linde Air Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); King-Seeley Thermos Co. v. Tastee Freez Industries, Inc., 357 F.2d 875 (7th Cir. 1966), cert. den., 385 U.S. 817, 87 S.Ct. 38, 17 L.Ed. 2d 56 (1966).

The second portion of this case, concerning the alleged invalidity of the Matthews patent, is considerably simpler to resolve. Lucerne agreed to develop a switch to operate the variable speed feature of a Skil electric tool. In order to finance this development and obtain its fruits, Skil placed an order with Lucerne for 100,000 switches on March 2, 1964, calling for 25 to 30 samples to be delivered within two weeks.

Matthews, on behalf of Lucerne, developed a switch with a horizontal rheostat and shipped some hand-made examples of it to Skil in the Spring of 1964. They did not work satisfactorily and Skil returned them.

On about July 4, 1964 Matthews conceived the idea of placing the rheostat in a vertical position, and this change resulted in a satisfactory switch. Lucerne shipped some examples of this modified switch to Skil in July 1964, and Skil received them for testing on August 8, 1964. No restrictions on disclosure were imposed. Lucerne finished its tooling about August 11 and began producing the new switches, although it had no assembly line for quantity production. Over 1,000 of these switches had been sold to Skil by August 20, 1964 and Skil incorporated at least 449 with drills for sale in July and August. Matthews did not file his application for the modified switch until August 23, 1965.

■ Defendant admits that shipments of the switch with a vertical rheostat were made to Skil before August 23, 1964 but contends that this was for experimental or developmental purposes.* This contention is belied by the

---

* Defendant's Memorandum of Authorities on Contested Issues, filed on the eve of trial, states on page 25:

Defendant submitted some experimental sample devices to plaintiff for examination and possible approval more than

fact that Lucerne made no significant changes in the switch after July. Also these shipments were credited against the purchase order for 100,000, and Skil paid Lucerne the agreed price of $3.00 a unit. Finally, in other litigation, when it was to defendant's advantage to establish an early sale date, Matthews testified that Lucerne made sales of switches to Skil in January through June 1964, without mentioning any experimental use. Although the earlier sales involved the switches with the horizontal rheostat, if *they* were not experimental, the switches with the vertical rheostat were not. We find and conclude that the switch had been commercially sold to Skil and thereby dedicated to the public more than a year before the filing date. See City of Elizabeth et al. v. American Nicholson Paving Co., 97 U.S. (7 Otto) 126, 24 L.Ed. 1000 (1877); Watson v. Allen, 103 U.S.App.D.C. 5, 254 F.2d 342 (1958).

The fact that Underwriters Laboratory did not approve the switch with the vertical rheostat until September 3, 1964 does not change the date of the first sale. Defendant notified Underwriters that it was ready for testing of switches made with production tooling on July 15, 1964. Even though Skil's purchase order and defendant's product liability insurer both required Underwriters' approval, neither of these facts preclude Lucerne from producing and selling unapproved switches as soon as they were ready. Matthews verily believed the modified switch would work, and he would not be expected to let his production facilities lie idle while awaiting the UL approval. The crucial fact is the sale, not whether defendant had UL approval or a final assembly line in operation.

Plaintiff also introduced evidence that a magazine entitled *Electrical Equipment* published a description and photograph of the modified Matthews device shortly before August 23, 1964. There is evidence from Post Office officials that this magazine was mailed out over the weekend before August 24 (which was a Monday) but no evidence that it was received by any subscriber or purchaser before that date. Furthermore the description of the switch in the magazine is not sufficiently detailed to constitute publication within the meaning of 35 U.S.C. § 102(b). Application of Le Grice, 301 F.2d 929, 936, 49 CCPA 1124 (1962); Accord Philips Electronic & Pharmaceutical Industries Corp. v. Thermal and Electronics Industries, Inc., 450 F.2d 1164 (3rd Cir. 1971); Bros Inc. v. W. E. Grace Manufacturing Co., 351 F.2d 208 (5th Cir. 1965), cert. den., 383 U.S. 936, 86 S.Ct. 1065, 15 L.Ed.2d 852 (1966). We find that the evidence of publication is not sufficiently clear and convincing to set aside the Matthews patent, although it does tend to confirm that defendant was producing and selling the switch to Skil more than one year before the date of Matthews' application.

It is not necessary at this stage of the case to reach plaintiff's final point that withholding of information concerning sales of switches with the horizontal rheostat constituted such fraud on the Patent Office as would void the patent. We find that the deposition of the former Solicitor of the Patent Office, Joseph Schimmel, is admissible, but we do not find that plaintiff has adduced the clear and convincing evidence required to set aside a patent under such cases as Beckman Instruments v. Chemtronics, Inc., 439 F.2d 1369 (5th Cir. 1970). It per-

---

one year prior to the August 23, 1965 filing date of the application which issued into the Matthews et al patent but the defendant denies that any such experimental sample devices were approved by Underwriters' Laboratory or were approved for fulfillment of the or-

der by the plaintiff. Defendant submitted invoices to plaintiff seeking compensation for such experimental sample devices and received compensation on at least some of those invoices before August 23, 1964.

haps would have been the better part of candor to divulge this information when filing the application, and we do not preclude this apparent error of judgment from being raised in connection with the question of fees and costs.

It is therefore ordered, adjudged and decreed that judgment is entered in favor of the plaintiff Skil Corporation and against the defendant Lucerne Products, Inc. on Count I as to Claim 5 and on Count II, and the plaintiff is directed to submit a judgment order in a form agreed to by the defendant on April 9, 1973 at 9:30 a. m.