## McGRATH v. BURKE.

(Court of Appeals of District of Columbia. Submitted March 8, 1926. Decided April 5, 1926.)

No. 1821.

**1. Patents** ⬤=90(5).

Making sample by hand is a sufficient reduction to practice of invention for envelope having separate compartments for mail matter of different classes.

**2. Patents** ⬤=83—Nearly two years' delay after reduction to practice before filing of application held not to show abandonment, in view of pendency of another application thought to cover invention.

Delay for nearly two years after reduction to practice before filing of application *held* not to show abandonment of invention, where it

was due to applicant's belief that another pending application covered the invention involved and fully protected him.

Appeal from the Commissioner of Patents.

Interference proceeding between Charles M. McGrath and Edward W. Burke. From a decision of the Commissioner of Patents for the latter, the former appeals. Affirmed.

Archworth Martin, of Pittsburgh, Pa., for appellant.

G. H. Kennedy, Jr., of Worcester, Mass., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from the decision of the Commissioner of Patents in an interference proceeding. The invention in issue relates to an envelope provided with two separate compartments—one for first-class mail matter, and the other for mail matter of a different class, and constructed of a single piece of material. It is intended that in this envelope both classes of mail matter may be transmitted together. The envelope is sufficiently illustrated in the following count:

"A duplex envelope formed of a single piece of material having a front portion, a main back portion folded over onto said front portion, a supplemental back portion folded over onto said main back portion, the opposite end portions of said supplemental back portion being connected to said main back portion, the intermediate portion of said supplemental back portion being free, whereby a compartment is formed between said back portions of the depth of said supplemental portion with an opening for the mail matter, and a sealing flap on said supplemental back portion at its intermediate portion adapted to be connected to said main back portion."

[1] There is little conflict as to the facts. Appellant, McGrath, reduced to practice in September, 1922, and filed his application October 6, following. Appellee, Burke, reduced to practice March 29, 1921, and filed his application December 26, 1922. The reduction to practice in both instances consists of making sample envelopes by hand. We agree with the tribunals of the Patent Office that this invention is so simple in character that the making of an envelope by hand, which meets the terms of the issue, amounts to a complete reduction to practice. "Devices so simple and of such obvious ef-

ficacy that the complete construction of one of a size and form intended for and capable of practical use is held sufficient, without test in actual use." Sydeman & Meade v. Thoma, 32 App. D. C. 362.

[2] The case, therefore, turns upon the action of Burke and his ability to relieve himself from the charge of having abandoned his invention. Burke was in the employ of the United States Envelope Company, and on March 29, 1921, delivered as reduction to practice one of the envelopes to his employer, and it appears that he had nothing more to do with the matter until the application papers were submitted to him for signature in November, 1922. When the sample envelope was submitted to the United States Envelope Company, it was already in possession of an envelope known as "Cather's Mon-O-Post." This envelope differed in little, if any, particular from the Burke envelope. The United States Envelope Company, owner of the Cather invention, filed an application for a patent thereon June 4, 1921. It is alleged that this filing was intended to cover and protect both the Cather and Burke envelopes, and it is contended that the Cather application now contains claims that dominate and protect the Burke envelope. For this reason, the United States Envelope Company relied upon the protection of the Cather filing alone.

On November 14, 1922, the Patent Office suggested interference claims to McGrath and to Cather. McGrath did not make the claims, but they furnished the basis for an interference between Cather and a third party. It then became apparent to the United States Envelope Company that to protect the Burke invention a separate application should be filed. This move was further inspired by a request which the United States Envelope Company received to furnish quotations for the manufacture of several thousand envelopes in accordance with a submitted sample, which was in effect a replica of the Burke envelope. This event was followed speedily by the filing of the Burke application.

It is sought by counsel for appellant to bring Burke's case within the rule announced in Mason v. Hepburn, 13 App. D. C. 86. In that case, however, seven years elapsed between the reduction of the invention to practice by Mason and the filing of his application. During that period there had been a complete suppression of the invention. Mason in the meantime had applied for, and received, a patent upon a similar invention, and until the Hepburn patent came to his attention, his earlier invention seems to have passed from his mind. This court has refused to extend the rule of the Hepburn case, which is a strict one, to any case not coming clearly within it. McBerty v. Cook, 16 App. D. C. 133.

The case before us, we think is clearly distinguishable from the Hepburn Case. In this case less than two years elapsed between the date of Burke's reduction to practice and the filing of his application in the Patent Office. This is not a case where an inventor, who has merely conceived an invention, is spurred into activity by the entry of a rival inventor into the field. He had reduced to practice, and before abandonment of the invention can be presumed there must appear a deliberate intention on the part of the inventor to surrender all claim to the invention.

The present case seems to come clearly within the holding of this court in Esty v. Newton, 14 App. D. C. 50, and it was so held by the Board of Examiners in Chief and the Commissioner of Patents. There, as here, Newton delayed his application for two years, while he was engaged in efforts to make improvements in the subject-matter of the invention. During the period of delay, two patents were issued to him on the same subject-matter. On this point the court said: "Newton was engaged in constant efforts at improvements in fire extinguishers. He had an application for a patent for one that was issued March 31, 1891, and experimented with another that was patented July 12, 1892. This last he then, and also when he testified, considered better and more efficient than the one in controversy, and he would probably not have applied for a patent for the latter had he not seen Esty's device. Being advised that his last patent did not cover this one, he made his application in order to prevent the competition of Esty. This is no more than seems to have been often done by inventors under similar circumstances. By actual reduction to practice the right to the invention becomes perfect, and can only become subordinate to the claim of a subsequent bona fide inventor by some such course of conduct as that shown in Mason v. Hepburn, supra, and the cases therein cited."

Here the assignee of Burke was relying upon the Cather application as a complete domination of the Burke invention, and when its attention was called to the McGrath device, and it became apparent that the Cather application did not furnish full protection, the Burke application was made in

order to prevent the competition of Mc-Grath.

The decision of the Commissioner of Patents is affirmed.